BARTEK STANUS ET AL. V. JOHN D. SMITH ET AL.

No. 485.

1. **Pleading—Supplemental Petition.**—In a supplemental petition the allegation of new facts should be of such only as are in reply to those which have been alleged by the defendant; but where no special exception is urged on this account, and the defendant asks a charge of the court with reference to the truth of facts so improperly pleaded, the error will be held waived.

2. **Evidence—Field Notes—Void Survey.**—In an action of trespass to try title involving a question of boundary only, the field notes of a survey adjoining the one in controversy, made by the same surveyor and only a few days afterwards, are admissible in evidence, although such latter survey has been cancelled and is void.

3. **Surveys—Excess—Rules of Construction.**—When two surveys, made by the same surveyor at or about the same time, call for a common division line, and are mapped as adjoining, the fact that an excess is in one or both of such surveys will not be a sufficient reason for separating them in favor of a subsequent locator.

4. **Practice on Appeal—Assignment of Error.**—Where the assignment of error is to the refusal of the court to give a special charge, it should show how such refusal was prejudicial to the appellant, and the statement accompanying it in the brief should show the applicability of the charge to the facts of the case.

5. **Surveys—Construction of Calls—Fact Case.**—See the opinion for facts held sufficient to establish a survey different in contour from that as called for in its original field notes, and to show that by mistake in making out such original field notes, certain calls for distance therein were transposed.

APPEAL from Bexar.    Tried below before Hon. GEO. H. NOONAN.

*Peter Shields*, for appellant.—1.    The court erred in admitting in evidence the field notes of the A. M. Berry survey, because the same was cancelled and void as made under and by virtue of an illegal certificate, and incompetent for any purpose.    Wilson v. Stoner, 11 Am. Dec., 664; Improvement Co. v. Munson, 14 Wall. (U. S.), 442.

2.    It is erroneous on the part of the court to select one of several boundary lines in the evidence and submit it to the jury in his charge, wholly ignoring the other lines.    It is also error to assume that a certain line is a common boundary line between two surveys unless they each call for the other, and to submit it to the jury as such in the charge.    It is also error to ignore the original field notes and shape of a survey in evidence, and alone submit other and different field notes and shape to the jury in the charge.    Ayers v. Beaty, 24 S. W. Rep., 366; Critchlow v. Beatty, 23 Id., 960; Creench v. Davidson, Id., 995; Dunn v. Eaton, Id., 163; Brient v. Bruce, 24 Id., 35; Williams v. Beckham, 26 Id., 652; Bolton v. Lann, 16 Texas, 96; Browning v. Atkinson, 46 Texas, 609; George v. Thomas, 16 Texas, 90; Tippin v. McCampbell, 26 S. W. Rep., 647; Ratliff v. Burleson, Id., 1003; Jones v. Andrews, 72 Texas, 15; Allen v. Koepsel, 77 Texas, 505; Castleman v. Pouton, 51 Texas, 84; Stafford v. King, 30 Texas, 258; Bailey v. Baker, 23 S. W. Rep., 454.

3.    In establishing the lines of an old survey the original field notes and contour should be adhered to and preserved, and secondary or passing calls should not be allowed to control primary and locative calls, and in the absence of the monuments called for, course and distance should control the location of the survey.    When the other corners and lines of a survey can not be identified on the ground, it should be located by course and distance from its beginning corner when the same is identical or can be definitely located from other known corners of the survey to which it belongs.    In locating an older survey, the surveyor is not authorized to take as one of its corners the corner of a younger survey not called for by the older, unless clearly shown to be identified, nor to use as its monuments objects not clearly shown to be such.    Cable v. Dignowity, 17 S. W. Rep., 33; Tippin v. McCampbell, 26 Id., 647; Williams v. Beckham, Id., 652; Ratliff v. Burleson, Id., 1003; Stafford v. King, 30 Texas, 258; Allen v. Koepsel, 77 Texas, 505; Browning v. Atkinson, 46 Texas, 609; George v. Thomas, 16 Texas, 90; Bailey v. Baker, 23 S. W. Rep., 454; Jones v. Andrews, 72 Texas, 15; Bolton v. Lann, 16 Texas, 96; Jones v. Bargett, 46 Texas, 284; Heaton v. Hodges, 30 Am. Dec., 731; Thropp v. Cheeseman, 16 Johns. (N. Y.), 264; Burnett v. Burriss, 39 Texas, 501; Johnson v. Archibold, 78 Texas, 96; McCormick v. Huse, 78 Ill., 363; Hume v. Hesrnlodt, 12 S. W. Rep., 285; Schunior v. Russell, 18 S. W. Rep., 484; Berry v. Wright, 14 Texas, 270; Bass v. Mitchell, 22 Texas, 285; Browning v. Atkinson, 37 Texas, 633; Smith v. Russell, 37

Texas, 247; Anderson v. Stamps, 19 Texas, 464; Booth v. Upshur, 26 Texas, 68; Booth v. Strippleman, 26 Texas, 440.

*William Aubrey*, for appellee John D. Smith.—A survey made by a deceased surveyor, calling for one or more of the lines of another survey made by the same surveyor at about the same time, locating said lines, is admissible, whether legal or not, as declarations to show where such lines were located. Cottingham v. Seward, 25 S. W. Rep., 797.

NEILL, ASSOCIATE JUSTICE.—The appellee, J. D. Smith, brought this suit in the ordinary form of trespass to try title, against Bartek Stanus, Carlos Zigmond, and Peter Zigmond, to recover possession, and establish the boundaries, of survey number 26, in the name of Demacio de los Reyas, situated in Bexar County. After the original petition was filed, W. H. Irwin, John Kuleza, and Gustavus Stanus were by supplemental petitions made parties defendant.

Gustavus Stanus disclaimed any interest in the land. W. H. Irwin admitted the boundaries of the land as described in the plaintiff's supplemental petition, and prayed that the south boundary line, as therein designated, be established as the north boundary line claimed by him. All the other defendants pleaded not guilty, and denied that they claimed or occupied any of the survey sued for. Bartek Stanus, Carlos Zigmond, and John Kuleza each impleaded his warrantors, respectively, W. H. Hill, Anton Stanus, and Joseph S. Kinnard, Jr., and asked judgment against them in event of plaintiff's recovery. Neither Hill nor Stanus answered, but Kinnard denied that he sold any part of the survey in controversy. Defendant Peter Zigmond also pleaded improvements in good faith, and prayed judgment for their value in case the land was recovered by plaintiff. Carlos Zigmond and John Kuleza also pleaded the three and five years' statutes of limitation.

All of the parties to the suit, except Hill and Anton Stanus, agreed that no question of title was involved in the suit between the plaintiff and the several defendants, but that it involved alone the location and establishment of the boundary lines between said survey number 26 and the P. Vela de Rubio, C. Williams, A. H. Young, O. H. Peters, Anthony Deffenbaugh, Abraham Gasney, J. Isham, A. J. Phelan, A. B. Hill, and H. J. Howell surveys.

With this agreement, the case was tried before a jury, which resulted in a verdict and judgment in favor of John D. Smith, appellee, against Bartek Stanus, Carlos Zigmond, John Kuleza, Gustavus Stanus, and Peter Zigmond for the title and possession of said survey number 26, and adopting and fixing as its boundaries the field notes set out in plaintiff's third supplemental petition; and in favor of defendant Irwin against Smith for the title and possession of the land claimed by him in his answer, and in favor of Peter Zigmond against the plaintiff for the sum of $100 as the value of the improvements claimed by him in his answer. Also in favor of the alleged warrantors, Hill, Stanus, and

Kinnard, on the claims of defendants Bartek Stanus, Carlos Zigmond, and John Kuleza, asserted against them on their warranties.

This appeal is by Bartek Stanus, Carlos Zigmond, Peter Zigmond, and John Kuleza, from the judgment against them in favor of Smith, as above described.

1. The objectionable portions of the surveyor's reports were stricken out by the court on appellants' motion, and no objectionable features in the remaining parts are indicated by the assignment of errors, or apparent to this court from an examination of the record. Besides, after the reports, with these objectionable features eliminated, were read in evidence, E. G. Graves, the surveyor who made them, was placed upon the stand as a witness for the plaintiff, and testified without objection fully to everything contained in the reports, including the portions stricken out by order of the court. The order of survey does not appear in the record, and in its absence we will not presume —in a suit like this, to establish and fix the boundaries of a survey, the original bearing trees of which are no longer extant—that the surveyor was not authorized to ascertain and describe in his report its true boundaries in such a manner as to enable the court to properly designate the survey in its decree.

2. The office of a supplemental petition is indicated by Rule 5 of the District Courts, from which it seems that the allegation of new facts in such a pleading should be in reply to those which have been alleged by the defendant. The plaintiff's supplemental petition of October 10, 1893, describing the land sued for as it was designated in the report of the surveyor, was not a replication to any matters pleaded by defendants. But it was not excepted to for that reason, but upon the ground that it assumed to determine the question of fact at issue. This objection was not good. It stated facts which were left to be determined from the evidence. If, however, the proper exception had been interposed to this pleading and overruled, we do not think it should avail the appellants here, because at their request a charge was given which instructed the jury to find for them if they believed the lines set out in said supplemental petition were not the true lines of the survey, thus recognizing the pleading as valid and putting in issue the land designated therein. If the verdict had been in appellants' favor upon the issue presented by this charge, the plaintiff would be concluded by it; and as it is in his (plaintiff's) favor, it should, if otherwise valid, also conclude the appellants.

3. The A. M. Berry survey, which was made by the same surveyor who made the Reyas, and only a few days afterwards, calls for the northeast boundary, southeast corner, southeast boundary line, southwest corner, and southwest boundary line of the Reyas. The surveyor who made both of them died long prior to the institution of this suit. The A. M. Berry survey was cancelled after it was made, and the land occupied by it covered by other surveys. The field notes of this survey, made by the deceased surveyor who located it, were offered in

evidence by the plaintiff, and objected to by appellants, upon the ground that the survey was void and had been cancelled. No one claimed under this survey, and its field notes were not offered for any other purpose than as declarations of a deceased surveyor, who made it, as well as the survey of the land in controversy, to show the boundaries of the Reyas survey as established and recognized by him when the land was located. We think the field notes objected to were admissible for that purpose. Cottingham v. Seward, 25 S. W. Rep., 797. The cases of Wilson v. Stoner, 11 American Decisions, 664, and Improvement Company v. Munson, 14 Wallace, 442, cited by appellants' counsel, are not applicable. They simply hold, that a void survey is not such evidence of title in one holding possession and claiming under it as would authorize the presumption of a grant.

4. It is assigned as error that the court failed to submit for the consideration of the jury the original boundaries and field notes of survey number 26, as set out in plaintiff's original petition, and in submitting only different and contradicting lines and field notes set forth in his third supplemental petition, and in assuming they were the only lines and field notes in issue. This assignment is not supported by the record. The court, at the instance of appellants, did instruct the jury, that if they believed from the evidence that the lines of survey number 26, as set forth in plaintiff's original petition, and claimed by defendants to be the true lines thereof, and that the lines set out in his third supplemental petition are not the true lines thereof and inconsistent therewith, to find a verdict for defendants. The issue as to the correct boundaries of the survey having been submitted in a charge framed by appellants' counsel, they can not now say that there was error in the court's failure to do that which it did do at their request.

5. The court, at the request of the plaintiff, instructed the jury, "that when two surveys made by the same surveyor, at or about the same time, call for a common division line, and are mapped as adjoining, the fact that an excess is in one or both of such surveys will not be a sufficient reason for separating them in favor of a subsequent locator." It is contended that this charge erroneously assumes that survey number 26 calls for the boundary lines of the adjoining surveys, and that they, with it, have common boundary lines. The charge embodies a correct proposition of law which is applicable to facts as shown from the record to be undisputed. There is no controversy about the facts that the Berry and Reyas surveys were made about the same time by the same surveyor; that they have lines in common; that they were mapped as adjoining; that the A. H. Young was located on the part of the land occupied by the Berry, on the southwest of the Reyas, and that its calls and lines there are the same as were made for the Berry, its lines being in common with the Reyas, just as those of the Berry were, it also appearing on the map as adjoining in the same way; and that the Rubio survey is a recent location upon a supposed vacancy that could not exist if the Reyas and Young are contiguous.

6. There is no evidence stated by appellants' counsel in his brief, nor can we find any in the record, that would have warranted the court in charging the jury, as requested by appellants, "that a land owner is bound by lines established by him and recognized for many years as his boundary lines, and is estopped from denying the same as his true line as against land owners to whom he pointed out and claimed the same as his boundary lands when they purchased adjoining lands." If there had been such evidence, the charge should have gone further, and submitted the question as to whether the purchasers of such adjoining lands relied upon and were induced by them to make such purchases, for if they did not rely upon such acts and representations, and were not induced by them to make such purchases, the land owner would not be estopped from showing his boundaries as they actually were.

7. The appellants asked the court to instruct the jury: "It is of no consequence that surveys subsequently located to cover lands adjoining a prior located survey fall short or overrun in quantity. When they call for lines of the older survey, they must yield thereto and be controlled thereby;" and assign the court's refusal to give it as error. The assignment does not in any way indicate an error prejudicial to appellants; nor is a statement from the record appended showing its applicability to the facts. From a careful examination of the transcript, we fail to see how appellants would have been benefitted by the charge, or to find anything that would have warranted the court in giving it.

8. Special charge number 4, asked by appellants and refused by the court, is substantially embodied in the special charge referred to in our fourth conclusion of law, as well as in the fifteenth and sixteenth paragraphs of the court's general charge. Therefore there was no error in the court's refusal to give it.

9. It is urged by appellants that the verdict of the jury is contrary to the law and evidence, in that it violates the original construction of survey number 26 as to its original corner, field notes, and area, and constructs a new and different survey in lieu thereof, with different contour and area, and is based upon the erroneous theory that the surveyor, who originally located it, by mistake reversed his calls for Martinez Creek.

The accompanying sketch shows the position of the Reyas and contiguous surveys—the black lines, I, L, S, Q, M, showing the survey as established by the judgment appealed from, and the lines, I, K, I, W, X, showing the boundaries as contended for by appellants. All the contiguous surveys, except the J. Isham and Gosney, were made subsequent to the Reyas, which survey was made June 9, 1839.

[FOR SKETCH SEE INSET FOLLOWING.]

The testimony shows to a reasonable certainty that the boundary lines of the Reyas survey were actually run on the ground and its corners designated by bearing trees by the surveyor who made the

Scale 800 Vs. per Inch

original survey. Its beginning corner, which is the southwest corner of survey number 27, on Martinez Creek, is approximately located, though the bearing tree called for is not there. If from thence a line is run north 16 west 600 varas, as called for in the field notes, and from thence the north boundary line is run according to course and distance, it will cross Martinez Creek and place the northwest corner south of the creek, instead of 1340 varas north of the creek, as called for in the original field notes. However, by reversing the calls of the Reyas survey and running north 60 west 1340 varas, thence west by course and distance as called for in its original field notes, establishing a corner there, and run thence south 16 east, the line thus run not only crosses Martinez Creek, but reaches it just 600 varas from the northwest corner. From this coincidence, in connection with other facts, the surveyor who made the survey in this case under order of the court gave it as his opinion that the surveyor who made the original survey, in the preparation of his field notes, inadvertently transposed the figures, and inserted for the distance from the point of beginning to the northwest corner of the survey, 600 varas, instead of 1340 varas, and for the distance from the northwest corner of the survey to the creek, 1340 varas, instead of 600 varas.

The Reyas survey and that in the name of A. M. Berry were made about the same time, by the same surveyor, and the latter ties to the former. The Berry calls for the Reyas at its northeast boundary line, southeast corner, southeast boundary line, southwest boundary line. At the southwest corner of the Reyas, the two surveys have a common bearing tree, which is called for in their original field notes. At this corner, E. G. Graves, who made the survey under order of court, testified, that he found an old marked tree cut down, but could not say whether the marks upon it were natural or made by a surveyor; and that he identified by the original bearing trees the extreme eastern corner of the A. H. Young survey and the northwest corner of the Peters survey, such corners being the southwest corners of the Reyas.

Garretson, who also surveyed the Reyas and adjoining surveys in 1887, testified, that when he ran down to the southwest corner of the Reyas he found the corner made by McDonald (the surveyor who located the Young survey), about ten years after the Reyas was located, when he fixed this corner of the Young as the southwest corner of the Reyas; and that he found McDonald's two bearing trees, and that he there found an old shell of a tree on the ground not yet rotten or dead, which he raised up, and found thereon old marks just like those called for in the field notes of all old surveys, calling for the southwest corner of the Reyas survey. The original southwest corner of the Berry survey was found and identified upon the ground by Graves, who then ran out the lines of the Berry by course and distance to the point where was located the common bearing of it and the Reyas survey, at the southwest corner of the latter, and by course and distance fell short of the corner only 34 varas. This testimony to our minds sufficiently

established and identified the southwest corner of the Reyas. Its south line projected from this corner as established by Graves is an old marked line, but the witness could not say when the marks were made.

The northwest corner of the Reyas in the original field notes calls for a stake "from which a mesquite 10 inches in diameter bears north 31 west 27 varas, no other tree near." Garretson says he ran up there from the southwest corner, and found an old broken down tree about 341 varas north of the northwest corner of the Reyas as shown by the plat; that it was a mesquite, of the kind called for in the field notes, and the only one he found there. Graves, in making his survey, found the same tree, which he calls a lightning-split tree, and says it had marks on it in about the proper place for a tree to be marked.

All of this evidence is in perfect harmony with the theory that the surveyor who located the Reyas by inadvertence transposed his field notes of the survey, and is inconsistent with any other theory.

As the lines of the Young call for the Reyas, the Rubio survey, which was made long afterwards, and is wedged between them, is clearly invalid. There is nothing in the record to show that any of the remaining adjacent surveys are in conflict with the Reyas as established by the verdict and judgment in this case. But it would appear that it would conflict with the surveys south of it if established as appellants contend it should be, and leave the Young, Peters, and Deffenbaugh without their corners, bearings, and boundaries as originally established, and the Reyas without a corner, bearing, or line to identify it.

We conclude that the verdict is reasonably supported by testimony which, under the circumstances, is as satisfactory as can be obtained, and should not therefore be disturbed.

It is true that the survey as established is different in contour from a survey made in accordance with the original field notes. But what the contour of a survey might be, if run by course and distance, does not affect a survey actually run on the ground and its corners established. In such case, it must yield to the footsteps of the surveyor.

Gustavus Stanus does not appeal from the judgment entered against him on his disclaimer in favor of plaintiff, and appellants are in no way injured or affected by it. Besides, such judgment was proper. Wootters v. Hall, 67 Texas, 515.

10. There is no evidence tending to show that any of the appellants purchased from their alleged warrantors any of the land recovered by the plaintiff. On the contrary, it appears that the lands purchased by them were on different surveys. Besides, the record shows that they only appealed from the judgment recovered by Smith, it being the only judgment described in their appeal bond, in which no reference is made to the judgment in favor of their alleged warrantors.

There is no error assigned which requires a reversal of the judgment in this case, and it is affirmed.

*Affirmed.*

Delivered November 28, 1894.