**STANDEFER v. VAUGHAN et al.**    (No. 1557.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 7, 1920. On Motion for Rehearing, March 3, 1920.)

**1. BOUNDARIES ☞1—ANY MARKED CORNER OR LINE FOUND IN SYSTEM OF SURVEYS TO BE CONSIDERED IN LOCATING ANY SURVEY.**

In arriving at true location of block in a system of surveys, the conditions and circumstances surrounding its location, as well as the lines actually run by the surveyor, and the corners fixed on the ground, should be considered.

**2. BOUNDARIES ☞3(1), (6)—MARKED LINES OR CORNERS CONTROL COURSES AND DISTANCES.**

Where a corner or line is found marked, it influences all other surveys in the block, even though it operate to change calls for courses or distances.

**3. BOUNDARIES ☞11—BLOCKS OF SURVEYS CONTAINING EXCESS TO BE CONSTRUCTED CONSECUTIVELY AS SHOWN BY MAPS, SKETCHES, OR FIELD NOTES.**

Under Rev. St. 1911, arts. 5396–5399, enacted to validate surveys and provide for ascertainment, distribution, and sale of the excess in surveys made for the school fund, in constructing blocks of surveys in which there is an excess, they must be constructed consecutively as placed therein by the original maps, sketches, or field notes.

**4. BOUNDARIES ☞6—CALLS MAY BE REVERSED AND RUN FROM MARKS FOUND ON THE GROUND.**

Where no evidence can be found on the ground of the actual location of the beginning call, the calls may be reversed and run from marks found on the ground which are a part of the survey made.

**5. BOUNDARIES ☞3(7)—CALL FOR ADJOINER NOT CONTROLLING OVER COURSE AND DISTANCE WHERE SHOWN A MISTAKE OR MADE ON CONJECTURE.**

While ordinarily a call for an adjoiner will control course and distance, not so where it is shown it was a mistake or made on conjecture.

**6. BOUNDARIES ☞7 — LOST CORNERS AND LINES TO BE ESTABLISHED FROM NEAREST KNOWN CORNERS.**

Lost lines and corners should be located from the nearest known corners, especially when a corner called for is in conflict with all the other calls found and established and which are nearer in point of time and distance.

**7. BOUNDARIES ☞10 — VACANCY BETWEEN BLOCKS OF SURVEYS.**

Field notes of blocks of surveys *held* not to create a vacancy between them, but to evidence intention to tie them together.

**8. PUBLIC LANDS ☞173(7)—TILL EXCESS IN BLOCK OF SURVEYS GIVEN SCHOOL FUND IS LOPPED OFF BY COMMISSIONER NO RIGHT TO PURCHASE EXISTS.**

Till excess in a block of surveys, which Acts 1889 (Rev. St. 1911, arts. 5396–5399) give to the public school fund and provide shall be set apart by the land commissioner, is lopped off by him, there is no right to purchase it.

**On Motion for Rehearing.**

**9. BOUNDARIES ☞54(1)—CERTIFICATION BY ONE NOT ON GROUND DOES NOT MAKE SURVEY AN OFFICE SURVEY.**

A location of a block of surveys is not rendered an office survey by the mere fact that the person who certified as deputy surveyor to the surveys being made according to law is not shown to have been present when the block was run out.

**10. BOUNDARIES ☞33—PRESUMPTION IS THAT SURVEYOR WAS ON THE GROUND.**

Assumption that, because no marks of the beginning corner of a block of surveys are now on the ground, the surveyor was not there and never marked the point, is against the presumption of law.

Appeal from District Court, Lynn County; W. R. Spencer, Judge.

Action by W. R. Standefer against W. F. Vaughan and others. Judgment for defendants, and plaintiff appeals. Affirmed.

H. C. Ferguson, of Waxahachie, and R. A. Sowder, of Lubbock, for appellant.

G. E. Lockhart and C. H. Cain, both of Tahoka, and J. H. Beall & Son, of Sweetwater, for appellees.

HUFF, C. J. This action is in the nature of trespass to try title, but really to establish a vacancy. The appellant, Standefer, brought suit for the following described land: Situated in Lynn county, Tex., beginning 519 vrs. E. from the S. W. corner of section No. 508, block 1, G., C. & S. F. Ry. Co. survey, which S. W. corner of section 508 is 19 miles and 700 vrs. S. 89° 47′ W. from the S. E. corner of section 1223, G. W. T. & P. R. R. Co., made by land certificate No. 1/391, in the name of said company, which S. E. corner is identified by a large stone mound set erect, and other stones piled around it, from which a peak bears W. about 2½ miles; thence N. 89° 47′ E. 1,381 vrs. to the N. W. corner of section 517, block 1; thence S. 13′ E., with the W. line of sections 517 and 516, 3,800 vrs. to the S. W. corner of section No. 516; thence N. 80° 47′ E., to a point in the S. line of section 516, 521 vrs.; thence S. 13′ E. to the N. line of survey No. 3, block Q; thence N. 89° 47′ W., with the N. line of said survey No. 3, block Q, to its N. W. corner, the same being the S. E. corner of survey No. 2, block 1, E. L. & R. R. R. R.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Co.; thence N. 13' E., with the E. line of said section 2, block 1, 3,845.2 vrs. to the N. E. corner of said section No. 1; thence N. 89° 47' W. 120 vrs. to a point on the N. line of said section No. 1; thence N. 174 vrs. to the place of beginning. The defendants, appellees here, answered not guilty and specially other matters not necessary to set out. For the purpose of a clearer understanding of the location of the sections and blocks we attach hereto a map, which shows the location as intended by the appellees.

MAP OF SURVEY Nos. 506, 507, 508, 515, 516, 517, 518 and 530, BLOCK 1, G., C. & S. F. RY. CO., AND SURVEY No. 5, BLOCK 1, E. L. & R. R. R. CO., IN LYNN COUNTY, TEXAS, 1878.

- ⊙ MARKINGS FOUND LIKE THOSE CALLED FOR IN ORIGINAL FIELD NOTES.
- ⊙ MARKINGS LIKE ABOVE, BUT NOT CALLED FOR IN ORIGINAL FIELD NOTES.
- ⊙ MARKINGS CALLED FOR IN CORRECTED FIELD NOTES.

FILED WITH FIELD NOTES OF ABOVE SURVEYS.

*Map labels include: EASTERN DOUBLE LAKES; GUTHRIE LAKE 30 M.; TAHOKA BLOCK No. 1; E. L. & R. R. R. Co. BLOCK No. 1; G., C. & S. F. RY. Co. BLOCK No. 1; CAMP BRANCH CORNER; BEER BOTTLE CORNER; MULBERRY CORNER.*

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 228 | 318 | 319 | 322 | 5 | | | | | |
| 316 | 313 | 317 | 325 / 371 | 3 | | | | | |
| | 314 | 313 | 2 | 325 | 1 | | | | |
| | 309 | 312 | 327 | 326 | 2 | | | | |
| | 308 | 310 | 311 | 328 | 1 | | | | |
| 223 | 306 | 305 | 307 | 565 | 566 | 377 | 378 | | 363 |
| 221 | 303 | 223 224 | 567 | 568 | 323 | 376 | 379 | | 362 |
| 301 | 480 | 468 | TAHOKA 487 484 | 492 | 501 | 324 | 375 | 380 | 381 |
| | 205 | 470 | 475 | 483 | 491 | 493 | 500 499 | 502 | 510 511 |
| | 471 | 469 | 476 | 483 | 493 | E.L.&R.R.R.Co. 503 504 505 506 | 509 508 | 512 | |
| | 472 | 467 | 477 | 481 | 494 | 495 | 497 | 507 | 1 2 |
| | 473 | 486 | 478 | 479 | 460 | 495 | 496 | 508 | 1 2 |
| | 461 | 485 | 460 | 2 | 4 | 3 | G.C.&S.F.RY.Co. BLOCK No.1 516 517 518 519 520 | 507 506 505 504 503 502 501 | 5 6 1 2 |
| | 462 | 464 | 560 | 1 | 530 529 | 522 | 521 | 1428 1412 1411 1410 1409 1408 | 1413 1 2 |
| | 463 | 466 | 559 | 528 | 521 | 555 | 556 | 561 | 562 1372 1371 | 1415 1409 |
| | 604 | 558 | 557 | 552 | 551 | 565 559 | 553 | 567 1368 1367 | 1369 1370 1322 1373 | 1517 1407 |
| | 605 606 559 | BEER BOTTLE CORNER 557 | 552 551 | 1361 1366 1365 | | | | | |

The trial court filed the following conclusions of fact in part:

"I. That survey No. 2, block M. H. S. F. 6494, Lynn county, Tex., was awarded to S. N. McDaniel July 5, 1910, who conveyed the same by quitclaim deed to the plaintiff the 24th day of September, 1917 (this being the number of the survey claimed by appellant, of which the field notes set out in his petition is a description).

"II. That defendant A. A. Vaughan and W. F. Vaughan are the owners of sections 516 and 530, block No. 1, G., C. & S. F. Ry. Co. surveys in Lynn county, Tex., under awards of said lands made to them in 1902, and that their proofs of occupancy of said lands were made in 1905, as provided by law.

"III. That the defendant T. E. Park is the owner of the W. one-half of section No. 508, said block 1, G., C. & S. F. Ry. Co., Lynn county, under legal award and proof of occupancy of same having been made thereof.

"IV. That the defendant J. I. Bartley is the owner of the W. one-half of section No. 507, in said block No. 1, G., C. & S. F. Ry. Co.

"V. That the defendants Carl J. Baer, C. N. Baer, Marie Louise Baer, and Charlotta Baer are the owners in fee of section No. 517 in block 1, G., C. & S. F. Ry. Co.

"VI. That the land sued for by plaintiff in this case covers a tract thought to be vacant or to have been unappropriated public domain, situated west of said block 1, G., C. & S. F. Ry. Co., and that the plaintiff in this suit has not sought to question the title of the defendants to their said lands respectively, but contends that said surveys are situated in the north and east of the land claimed by plaintiff in this suit, the issue therefore being strictly one of boundary.

"VII. That said block 1, G., C. & S. F. Ry. Co., and its several surveys, were originally surveyed and located in connection with the system of blocks and surveys located by Jasper Hayes, deputy surveyor under Geo. Spiller, district surveyor, and his associates, in the latter part of 1877 and fore part of 1878, including much of the western part of Garza county and the eastern and middle portions of Lynn county, said block 1, G., C. & S. F. Ry. Co., being a part of said general locating work, it having been so located in May, 1878, in all of which location work there is more or less excess acreage in all the surveys.

"VIII. That said surveys 508, 507, 517, and 516, of said block 1, G., C. & S. F. Ry. Co., sought to be affected by the issues in the case, were surveyed and located May 13, 1878; that survey No. 1, to the west of said survey 508, and survey No. 506, to the south of survey No. 1, were surveyed May 24, 1878, by same surveyor, 11 days after the location of 508; that the N. E. corner of said survey 506 and the S. W. corner of said 508 is a common point and connecting corners of the two surveys; that surveys 1 and 2, block 1, E. L. & R. R. R. Co., situated to the south of said survey 508, and to the west of said surveys 517 and 516, were located May 24, 1878, 11 days after surveys 517 and 516 were located; that said survey No. 1 has as its beginning point the N. E. corner of said 506, the same point as the S. W. corner of said survey 508, block 1, G., C. & S. F. Ry. Co.; that survey 496 to the S. W. of said section 516, block 1, G., C. & S. F. Ry. Co., was located ten days after said 516 was surveyed and connects with said 516 at the N. E. corner of said 496, which point I find to be the common corner for the N. E. corner of said 496, the S. W. corner of said survey 516, the S. E. of said survey 2, block 1, E. L. & R. R. R. Co., the N. W. corner of survey 3, block Q, as originally located.

"IX. That in 1902 the plaintiff, W. R. Standefer, at the time that the defendants A. A. and W. F. Vaughan made application to purchase said sections 516 and 530, resurveyed said lands for said defendants, marking the corners of same by which said defendants were governed in settling upon said lands; that in 1907 the defendants in this case and those under whom they claim, together with various other

citizens of the country, employed the plaintiff, W. R. Standefer, as surveyor of Lynn county, to resurvey and mark the corners and boundaries of all said lands, and that the said W. R. Standefer, in making said survey, among other corners, placed an iron stake for the S. W. corner of survey 530, the N. W. corner of survey No. 1, the N. E. corner of survey No. 4, and the S. E. corner of No. 3, block Q, which iron pipe corner is yet standing in the center of cross lanes and highways at that point; that said surveys placed for the N. W. corner of said survey 530 the S. E. corner of 516, the N. E. corner of survey 3, block Q, and the S. W. corner of 515, block 1, G., C. & S. F. Ry. Co., a stake, at which point there is now a large fence post set in the ground, same being a fence corner. In like manner said surveyor set a stake to the southwest corner of said survey 516, block 1, G., C. & S. F. Ry. Co., the S. E. corner of section 2, E. L. & R. Ry. Co., the N. W. corner of survey 3, block Q; in like manner a stake was set for the northwest corner of said survey 516, the S. W. corner of 517, block 1, G., C. & S. F. Ry. Co., and the S. E. corner of survey 1, and the N. E. corner of survey 2, E. L. & R. R. Ry. Co.; and in like manner a stake was set for S. W. corner of 507, S. E. corner of 508, the N. W. corner of 517, block 1, G., C. & S. F. Ry. Co., and the N. E. corner of survey 1, block 1, E. L. & R. R. R. Co.; and in like manner a stake was set for the S. W. corner of 508, block 1, G., C. & S. F. Ry. Co., and the S. E. corner of survey 1, R. T. Ry. Co., and the N. E. corner of 506, E. L. & R. R. R. Co., and the N. W. corner of survey 1, E. L. & R. R. Co.

"X. That the corners so set up by the said W. R. Standefer in 1907 to said lands were at the original corners respectively of said surveys, and the improvements upon said lands at and since said time were erected and placed upon same according to said corners and boundaries, and that said improvements, including fencing, houses, highways, well, and farm implements, being so placed upon said lands, occupy such positions thereon at this time.

"XI. That the corners and boundaries set up by the said W. R. Standefer in 1907 conform to the found and recognized corners of the original surveys in locating said lands, and that the general improvements, public and private, throughout the entire country, conform to said lines and corners."

The appellant in this case obtains the vacancy alleged and upon which his vendor filed, the field notes of which are set out in his petition, by tying block 1, G., C. & S. F. Ry. Co., to a survey made September 28, 1878, No. 1223, G. W. L. & P. R. Co., in Garza county, by running the connection through intervening surveys 19 miles and 700 vrs. to the N. W. corner of section 508, G., C. & S. F., which latter point is claimed to be 907 vrs. E. of survey 1, block 1, E. L. & R. R. R. R. Co., and N. about 297 vrs. of the N. E. corner of section 506, and N. of section 1, said block, and thereby creating a vacancy between the two blocks, G., C. & S. F. No. 1 and E. L. & R. R. R. R. Co. No. 1. Surveys 1 and 2 in block 1, E. L. & R. R. Co., and surveys 1, 2, 3, and 4, block Q, were all placed in their position by the original surveyors in May, 1878, at the same time as the location of the other blocks and surveys. The appellant, after making the run from section 1223 above mentioned, went to the corner of section 1361, E. L. & R. R. R. R. Co., which is south 9 miles and east 3 miles from the N. E. corner of 501, block 1, G., C. & S. F., the field notes of which call to begin at the N. W. corner of section 1411, E. L. & R. R. R. R. Co. From section 1361 the surveyor for appellant, or his vendor, ran out the sections in block 1, E. L. & R. R. R. R. Co., which were built in west and north from that corner. He also appears to have obtained the vacancy north and south by running due west from section 1223, while in the block west of the land in question he ran the lines on a variation from the due east and west course. He allowed in the lands west of the vacancy the excess shown in the call of those sections; while east of the vacancy he only allowed the excess to a point south of what is known in the record as the Cobb corner, and from that point west he allowed only the distance called for in the original field notes.

The beginning corner of block 1, G., C. & S. F., is at the N. E. corner of section 501 of that block, calling for the N. W. corner of section 1411, E. L. & R. R. R. R. Co., surveyed January 10, 1878. All the field notes of block 1 for G., C. & S. F. are dated May 13, 1878, and the evidence shows that it was surveyed on that day, more than four months after section 1411. The evidence indicates there were no marks for section 1411 put in at its N. W. corner when surveyed, or, if so, none was identified on the ground, but that such survey gets its connection through surveys to the east made for different owners and surveyed prior to its location. The evidence shows on May 12, 1878, Jasper Hayes, who was in charge of a surveying party, placed in section 1361, E. L. & R. R. R. R. Co., and at its S. W. corner established a corner which is found on the ground and is recognized by all the surveyors as being the original corner called for by the field notes. This corner is known as the Camp Branch corner. From that point north for nine miles the surveyor put in a line of corners and marked them on the ground. These corners were found and the evidence is sufficient to identify them as the original corners placed there by Hayes. One witness, a surveyor, about 1912 went with Hayes, the original surveyor, and visited these and other corners. Disregarding what Hayes told the witness with reference thereto at that time, the evidence, sufficiently we think, indicates these were the original markings made by Hayes in May, 1878. E. L. Seeds, who was with the surveying party when the surveys were originally located, testified:

"I assisted in the original surveying in Lynn and Garza counties in the spring of 1878. * * * Jasper Hayes was the head of the party, and we were working under his direction. We went west from Grapevine corner, ran the line west to the best of my recollection four miles, and established what is called Camp Branch corner for base line. * * * We worked north from Camp Branch; using that line as our true meridian, * * * we ran west from that corner, I don't recollect how many miles. We also ran another line west from a corner which we established one mile north from the Camp Branch corner. This work was done in 1878, early in the spring. On the first trip we ran to the Camp Branch corner and made our headquarters camp at that point. We ran lines from there in different directions, going north about ten miles."

This witness described the Camp Branch corner and testified after putting in the corners and surveys at that time that about 60 days thereafter he returned, and that he and Z. T. Pennington were in charge of the surveying party, and that they started at the corners established in May and ran west and north zigzagging until they reached a point between two lakes where they put in a corner, known as the Double Lakes corner. The field notes thereof show this was July 10, 1878. Appellant Standefer himself is a surveyor and on different occasions ran out the land and was employed by the Vaughans and others to run out and establish different sections in that neighborhood. The corners established by him are practically the lines and corners appellees rely on as their boundaries. He made a map at that time for his employers, which shows that he found an original corner at the N. E. corner of 473, N. W. corner of 461, block 1, E. L. & R. R. R. R. Co., made by Hayes in 1878, and that the rectangular surveys built in north from that point until section 506 is reached; its N. E. corner calls for the S. W. corner of 508, block 1, G., C. & S. F., and that a right angle line projected from the N. E. corner of 473 formed the west line of section 508. His map also shows, by projecting a right angle line from the Double Lakes corner east 12 miles, the S. W. corner of section 508 is reached, and that such a line would form its south line, as well as the south line of all the north tier of sections in block 1, G., C. & S. F., including section 501. His map throughout shows that he established and identified corners as called for in the original field notes, that the entire system of surveys in both the blocks are rectangular surveys in sequence north and south and east and west, and that the right angle lines of such surveys are continuous and unbroken or undeflected through both blocks. He appended to his map the following certificate:

"I, W. R. Standefer, deputy surveyor of Lynn county, Tex., do hereby certify that the corners shown on the above map are original corners, erected by the locating surveyors in 1878; that there is vacancy existing only in the surveys shown on this map marked 'vacant.' The Camp Branch corner was pointed out to me by E. L. Seeds, S. W. corner 1361; also N. W. corner 1361; N. E. corner 551; N. E. corner 553. There is an old fence line, west line 1361 and 552, and E. of 553, and also on N. line of Nos. 553, 554, 555, corner posts were still standing in January, 1901, when I ran a connecting line to Double Lake from S. W. 1361 to S. W. 551. At S. W. corner 551 I dug a small black bottle with the name of J. Hayes. The balance of names could not be made out. I began at the S. W. corner 551 and found old corners on line to N. E. 473; thence north 11,559.6 vrs. point; thence W. 23,061.6 vrs. to a large circular cover at Double Lake. I returned to N. E. 473; thence W. at 7,656 vrs. I find old corner very plain; thence W. at 3,648 vrs. E. bank of Guthrie Lake at 3,828 vrs., point in lake 108 vrs. W. of E. shore of Guthrie Lake; thence W. 11,577.6 vrs. a point for N. W. corner of 33; thence N. 11,559.6 vrs. fall 1 vr. S. and 2 vrs. E. of Double Lake corner.

"Given under my hand this the 18th day of November, 1911.

"Note.—The red and dotted lines were all run by me on the ground and all the notations are true. The arrow points show the beginning of each survey and that severance of Nos. 561 and 562 as shown on Lynn county map by C. W. Holt, T. H. Seay, and J. H. Ramsey are contrary to law. Block 1, G., C. & S. F. R. R. survey was put in at the same time that block 1, E. L. & R. R. R. R. Co. was located, and by the same surveyor in May, 1878."

He also testified on the trial:

"I have been on that line of pit corners running nine miles north from the N. W. corner of 1361 or the S. W. corner of 551. I was not on that line of corners with Seeds. He pointed them out to me, and I went over there and ran them out. I was not on that line with Mr. Hayes. I forget who it was that was with me on that line of corners; it was back in 1903. Some of the chainmen I had, I think Mr. Ketner was there at one time, I am not sure. I don't remember that I was there with any other surveyor. I don't remember when I was there, but I went where all of them old pits and rocks are there; I put them there. I put the rocks at the pits, and I think that was in 1903 I put those rocks there to preserve those corners. I thought they were original corners. I know that those corners are the ones that Twichell followed. I talked to Seeds about them. * * * Seeds told me that he and Bandy ran the instrument, and that Hayes was reading. They were up there at that time in May, 1878. According to Seeds' testimony, Hayes was along as surveyor at that time."

The field notes of sections 559, 551, and 553 call at their N. E. corners for mounds and pits which all the surveyors testified were found on the ground. North thereof the same markings were made at the S. E. corner of 1367 and S. W. corner of 1366; at the S. E. corner of 1369 and N. W. corner of 1322; the S. E. corner of 1371 and S. W.

corner of 1373; the S. E. corner of 1410 and S. W. corner of 1408; the S. E. corner of 1409 and the S. W. corner of 1407. The field notes and testimony show that the N. W. corner of 1411 is two tiers of sections west of the point called for between sections 1409 and 1407. The field notes for the corners of the above sections do not call for the markings found on the ground, but the evidence is sufficient to show the markings were put in by Hayes May 12, 1878, supposing them to be at the corners of the surveys made and which he had theretofore surveyed January 10, 1878, the field notes of which had been filed and returned to the land office. The tier of surveys at the N. E. corner of 559, 551, 553, from Camp Branch corner north are established on the ground as called for by the field notes. N. one mile the N. E. corner of 559 is established, and on a line west therefrom markings are found and established the N. W. corner of 559, N. W. 605, N. W. 604, N. W. 463, N. E. 473. The block is built up from these calls north, and 527 in this block calls for 525, which later section is not otherwise described, either by certificate or block number. This call would place 525 near the position for 522, G., C. & S. F., block 1, except that the call is for the south line. The calls and surveys are made in sequence until 496 is reached, and its N. E. corner calls for the S. W. corner of 516, G., C. & S. F., and N. E. corner of 506 calls for the S. W. corner of 508, G., C. & S. F. The surveys south of the Gulf, Colorado & Santa Fé are dated ranging from May 12th to May 24th until the surveys were started west for Double Lakes corner in July. A. L. Marhoff, surveyor employed by the appellees in this case to run out their lines and make reports, had also represented the Post estate, who own much of the lands located by Hayes and others, ran out these various surveys a number of times, and identifies the corners heretofore mentioned at various sections, etc. All the sections from the work in September, 1877, and on through the blocks in May, are excessive, both north and south and east and west. As illustrating the relative position of the various sections to each other in the different blocks, we quote the following testimony from Marhoff:

"I made no run east from Double Lakes corner other than heretofore described. I did not locate any corner of block 1, G., C. & S. F., survey No. 1, E. L. & R. R. R. R. Co. from Double Lakes corner alone, but in locating the corner of the eight surveys in block 1, G., C. & S. F., also one in block 7, E. L. & R. R. R. R. Co., that I surveyed during September and October, 1918, I would call your attention to map marked 'M–4' for identification. I constructed almost a perfect parallelogram the width of six surveys north and south, and twenty surveys east and west, with the pits at the southeast corner of survey No. 551 for its southeast corner, and the south line of said parallelogram passing through the pits at the northwest cor-ner of survey No. 604, the pits at the southwest corner of survey No. 464, and the pits at the northeast corner of survey No. 473, extending the same until I reached a point south of the Double Lakes corner. The western part of this line is N. 89° 39' W. The northwest corner of the parallelogram was the Double Lakes corner. The east line of the parallelogram was the line of pits running north from the southeast corner of survey No. 551, and the north line of the parallelogram is a straight line between the Double Lakes corner and the pits at the northeast corner of survey No. 1410. I found the west end of this parallelogram to be 32,064.6 feet or 11,543.3 vrs., which I divided into six equal parts of 5,344.1 feet or 1,923.9 vrs.

"For the north line of surveys Nos. 517 and 518, also survey No. 1, E. L. & R. R. R. R. Co., or the south line of surveys Nos. 506, 507, and 508, I made a straight line between the Double Lakes corner and the pits at the northeast corner of survey No. 1410.

"For the north line of surveys Nos. 515 and 516, or the south line of surveys Nos. 517 and 518, I made a straight line between a point 5,344.1 feet or 1,923.9 vrs. south of the Double Lakes corner and the pits at the southeast corner of survey No. 1410.

"For the north line of survey No. 530 and survey No. 3, E. L. & R. R. R. R. Co., or the south line of surveys Nos. 515 and 516, I made a straight line between a point 10,688.2 feet or 3,857.8 vrs. south of the Double Lakes corner and the pits at the southeast corner of survey No. 1371.

"For the south line of survey No. 530, or north line of survey No. 1, H. E. & W. T. R. R. Co., block Q, I made a straight line between a point 16,032.3 feet or 5,781.7 vrs. south of Double Lakes corner and the pits at the southeast corner of survey No. 1369.

"For the north line of surveys Nos. 506, 507, and 508 or the south line of surveys Nos. 506, 507, and 508, passing through the pits at the northeast corner of survey No. 1409.

"For the north line of survey No. 5, block 7, I made a line parallel with the south line of surveys Nos. 506, 507, and 508, passing through the pits at the northeast corner of survey No. 1415.

"For the west line of survey No. 508 or the east line of survey No. 1, Cert. 17, R. T. Co., I ran a line N. 0° 21' E. from the pits at the common corner of surveys Nos. 461, 473, 467, and 486, for the reason it is at right angles from the line on the south side of the parallelogram or would be north if the south line of parallelogram is E. and W. as called for in original field notes.

"For the west line of surveys Nos. 530, 515, 518, 506, or the east line of survey No. 3, E. L. & R. R. R. R. Co. and surveys Nos. 516, 517, 507, also No. 5, block 7, I ran a course N. 0° 21' from the pits at the common corner of surveys 463, 462, 485, and 464, for the same reason that I ran the line N. 0° 21' E. from the common corner of surveys Nos. 461, 473, 467, and 486.

"For the west line of surveys 516, 517, 507, and 5, block 7, or the east line of survey No. 508, and 1 and 2, E. L. & R. R. R. R. Co., I ran a line N. 0° 21' E. from a point midway between the pits at the common corner of

surveys 461, 473, 467, and 486, and the pits at the common corner of surveys Nos. 463, 462, 485, and 464, for the same reasons as given above.

"For the east line of surveys Nos. 506, 518, 515, and 530 I ran a line N. 0° 21′ E. from a point midway between the pits that were at the northwest corner of 604 and the pits at the common corner of surveys Nos. 463, 462, 485, and 464, for the same reasons as above.

"Where the lines running north and south and the line running east and west, as described above, intersected, I located the several corners of the nine surveys as enumerated above."

There are a number of maps in evidence from the land office and made by other parties. The early sketches and maps returned to the land office by the surveyors locating the land and those in use by the land office up until about 1900, show that the two blocks between which it is sought to establish the vacancy in this case were tied together, and that the section lines were continuous right-angle lines from one to the other, and that rectangular surveys were erected consecutively through each block, both north and south and east and west.

[1] In arriving at the true location of block 1, G., C. & S. F., we think the conditions and circumstances surrounding its location, as well as the lines actually run by the surveyor, and the corners fixed upon the ground, should be taken in consideration to ascertain, if possible, his intent in placing block 1. We believe it is an established and recognized rule of our courts that marked lines and corners in a block or system of surveys belong as much to one block or section as to another therein. The Supreme Court of the United States, through Justice Lamar, in speaking of the rule that prevails in Pennsylvania, in the case of Clement v. Packer, 125 U. S. 327, 8 Sup. Ct. 915, 31 L. Ed. 728, said:

"By the settled laws of Pennsylvania applicable to the location of surveys, original marks and living monuments on the ground constitute the survey, and they are the highest proof of its true location. The next most important evidence of location is the calls for adjoining surveys; and in the absence of both of them, and then only, the lines according to courses and distances returned by the surveyor into the land office determine the location. But it is equally well settled by an unbroken current of decisions in that state that the surveys constituting a block are not to be treated as separate and individual surveys; nor can each tract be located independently of the rest, by its own individual lines or calls or courses and distances, but such surveys are to be located together as one block or one large tract. If lines and corners made for such blocks of surveys can be found upon the ground, this fixes the location of the block, even to the disregard of the call for adjoiners. The lines and corners found upon any part of the block of surveys belong to each and every tract of the block, as much as though they do to the particular tract which they adjoin."

We especially call attention to two of the cases cited and quoted from in the above case. Malone v. Sallada, 48 Pa. 419; Pruner v. Brisbin, 98 Pa. 210. This rule is substantially recognized by our courts. Jones v. Brudett, 46 Tex. 285; Booker v. Hart, 77 Tex. 146, 12 S. W. 16; Randall v. Gill, 77 Tex. 351, 14 S. W. 134; Longoria v. Schaeffer, 77 Tex. 547, 14 S. W. 160; Bell v. Preston, 19 Tex. Civ. App. 375, 47 S. W. 375, 753; Wise v. Sayles, 38 Tex. Civ. App. 229, 86 S. W. 775; Taft v. Ward, 58 Tex. Civ. App. 259, 124 S. W. 437; McCormack v. Crawford, 181 S. W. 485; Crosby v. Stevenson, 156 S. W. 1110; State v. Dayton Lumber Co., 159 S. W. 395. The rule is not generally stated in our decisions as announced by the Pennsylvania courts, but it is resorted to and applied in a great number of cases. This occurs in nearly every one of the cases involving boundaries of sections in large blocks.

[2] Where a corner or line is found marked, it is treated as influencing all other surveys in the block, even though the mark should have the effect to lengthen or shorten the distance called for in the other sections or changing the course called for. The surveyor or courts distribute the excess or loss proportionately to all other sections in the block up to the mark so established. It is common knowledge that throughout the plains there are but few original marks on any of the great blocks of land surveyed and located, and in some blocks there are no original marks to be found, but they must get their connections from distant points called for in the field notes. It was difficult at the date of their location to find means of marking each corner or line. There was no timber, rocks, or other natural objects which could be used to identify surveys; the country for miles being much the same in appearance. This difficulty and condition has long been recognized by the bench and bar throughout the plains country, as well as by the citizens generally, and much uncertainty as to land lines has prevailed and litigation has resulted as a consequence. In many instances, as shown in this case, imperfect instruments were used, and with modern and more accurate instruments errors and inaccuracies in the original work are found on the ground. The rules of surveying are often found difficult of practical application by the courts. It seems to us the Legislature of this state must have had in mind these difficulties and uncertainties in establishing and locating lands when they passed Acts 21st Leg. 1889, c. 90, p. 103, carried forward in the present revision of our statutes as articles 5396 to 5399, inclusive. The caption of the act recites:

"An act to provide for the ascertainment, distribution, and sale of the excesses in surveys * * * made for the school fund, and to validate surveys * * * as herein provided."

An emergency clause of the act recites:

"Whereas there is much confusion and uncertainty in regard to certain lands surveyed in this state, and the rights of actual settlers and purchasers are dependent upon the validity of such surveys, creates," etc.

Section 1 of the act is:

"That all surveys and blocks of surveys heretofore made by virtue of valid alternate script be and the same are hereby declared to segregate from the mass of the public domain all the land embraced in said surveys or blocks of surveys, as evidenced by the corners and lines of same, or by calls for natural or artificial objects or the calls for the corners and boundaries of other surveys or by the maps and other records in the general land office."

Section 2 donates the excess to the public free school fund and makes it the duty of the commissioner of the general land office to ascertain the excess, "provided, that where such surveys were made in blocks of two or more surveys, said respective surveys shall remain on the ground consecutively as placed therein, as shown by the maps, sketches, and field notes originally returned to the general land office," giving the purchaser a preference right of six months to purchase such excess ascertained under the act.

[3] We believe this act evidences that in constructing blocks of surveys in which there is an excess they must be constructed consecutively as placed therein by the original maps, sketches, or field notes. The rights of all the parties to this action as to the school land sections originated after the act in question went into effect.

[4-6] Beginning the surveys at the Camp Branch corner and following the surveys in the consecutive order of their calls, the G., C. & S. F. block can and will be located where the appellees contend it should be. This entire system, being treated as one system from May 12th up to May 24th, and possibly up until July 10th, when the Double Lakes corner was established, is one large survey, and under the rule and by the statutes it will follow a surveyor would be authorized to begin at the Camp Branch corner to locate the Gulf, Colorado & Santa Fé block. If we should hold that that block's beginning call is at the N. E. corner of 501, and that there is no evidence of its actual location found on the ground, or for the call for section 1411, or if we should treat it as a lost corner, we yet believe, to find the true location of block 1, G., C. & S. F., the calls may be reversed and run from marks found on the ground, which are a part of the large survey made at the time. Crosby v. Stevenson, 156 S. W. 1110. The facts show that there was no locative call for either natural or artificial objects in the field notes in the surveys of January 10, 1878, of which section 1411 is one. The call for it by the surveyor on May 13th may be

treated as a conjecture, as it was then an unmarked line. It is ordinarily true that a call for an adjoiner will control course and distance, but a call for an unmarked line is accorded such weight upon the supposition that such line could easily have been ascertained by running out from a nearby known corner. Where it is shown a call was a mistake or made upon conjecture, it is not accorded controlling effect. Gerald v. Freeman, 68 Tex. 201, 4 S. W. 256; Robertson v. Mooney, 1 Tex. Civ. App. 379, 21 S. W. 143; Boon v. Hunter, 62 Tex. 582; Oliver v. Mahoney, 61 Tex. 610. It may be inferred from the evidence the line of corners running north from the Camp Branch corner were placed in under the mistaken belief that they marked the corner of the surveys theretofore located, and hence course and distance from the east tier of surveys made in September, 1877, would reach the mark so made. This evidences, we think, that the call for the N. W. corner of 1411 was a mistake on the part of the surveyor as to its location. It indicates that the surveyor placed the N. E. corner of block 1, G., C. & S. F., further west than the true N. W. corner of 1411 would be if located by course and distance from 1223, in Garza county, some 12 or 13 miles east, and all the other calls for corners and lines in the survey made at that time show such mistake. It is evident, we think, it was not the surveyor's purpose to create a vacancy between the two blocks then surveyed, as the surveys in one called for the surveys in the other. The beginning corner, which has not been found, will not control when other material and certain calls are found. Marks so found will control objects which are not found or which are uncertain and not known. Duren v. Presberry, 25 Tex. 523; Bass v. Mitchell, 22 Tex. 285; Taft v. Ward, 58 Tex. Civ. App. 259, 124 S. W. 437; Starnus v. Smith, 8 Tex. Civ. App. 685, 30 S. W. 262; Crosby v. Stevenson, 156 S. W. 1110; Brady v. McCuistion, 210 S. W. 815. It is also a well-recognized rule that in locating lost lines and corners the same should be done from the nearest known corners. Matador, etc., v. Cassidy, 207 S. W. 430; Jones v. Burgett, 46 Tex. 285; Randall v. Gill, 77 Tex. 351, 14 S. W. 134. We do not believe a subsequent locator should rely upon the call of section 1223, located in 1877, and the calls west to the N. E. corner of 501, G., C. & S. F., in order to locate block 1, when this call is in conflict with all the other calls found and established and which are placed both nearer in point of time and distance. Section 530, block 1, G., C. & S. F., is only 3 miles north from the N. E. corner of 462, block 1, E. L. & R. R. R. R. Co., an established and identified corner, placed in May, 1878, and in fact all the identified corners south of the alleged vacancy are nearer than the call relied on by appel-

lant. Davidson v. Killen, 4 S. W. 561. To do so would destroy the configuration and general contour of the blocks made in May, as shown by the field notes and sketch returned to the general land office at the time of the survey. The maps at that time and until much later show that the right-angle lines running through both blocks were the common boundary lines of the respective sections in each block.

[7] The appellant appears to rely on the case of the State v. Post, 169 S. W. 401, as determining the issues here involved in his favor. It will be perceived in that case the lands in question were surveys made in 1877 and January, 1878. It is held substantially that the line running north nine miles from the Camp Branch corner would not control the surveys east of that line, as that line, with reference to the surveys previously made, and for which their field notes did not call, would not be accorded a locative effect for the previous surveys, the field notes of which had been filed and returned to the land office. This court practically so holds in the case of Brooks v. Slaughter, 218 S. W. 632, this day handed down. It will be seen from the plat in the Post Case that section 553 calls for 1366, but the vacancy claimed in this case was not there in question. The sketch in that case shows that block 1, G., C. & S. F., is separated by a vacancy between sections 520 and 519 and 521 and 503. The field notes in this record upon no theory would create such a vacancy. There might, upon some theory, be found a conflict as to some of the surveys, but not a vacancy at those points.

[8] In this case the land commissioner had not set apart the excess in this block under the act of 1889 above referred to and mentioned, and as said by the Supreme Court:

"It is quite apparent that the defendant in error [appellants in this case] had no right to treat the land in controversy as such excess."

The land was not lopped off the block as required by the act. The appellant therefore acquired no 'right to purchase so long as it was a part of the original block. Willoughby v. Long, 96 Tex. 194, 71 S. W. 545.

We believe the judgment of the trial court should be affirmed.

### On Motion for Rehearing.

[9, 10] The appellant appears to base his case on the theory that the location of block 1, G., C. & S. F., is an office survey because Geo. Spiller signed the field notes, and is not shown to have been present when the block was run out. It makes no difference, as we conceive it, who signed the field notes, or rather certified to them. The testimony is not controverted that Hayes had charge of the surveying party who put in the surveys from May 12th up to May 24th. That party

was composed of Jasper Hayes, William Brannin, Enos L. Seeds, Z. T. Pennington, William Weeks, and a colored cook, Geo. Clark. All of the field notes of block 1, G., C. & S. F., were signed by Spiller as deputy surveyor, but the chainmen are Z. T. Pennington and William Weeks. Spiller simply certified the surveys were made according to law, not that he made the surveys himself. The field notes show, for instance, section 551, block 1, E. L. & R. R., was surveyed May 14, 1878, a day after block 1, G., C. & S. F., was surveyed. Brannin, as deputy surveyor, certified to these field notes, but the same chain carriers were in both sets of field notes, and in fact in most of the field notes of the two blocks, or at least a great many of them. Hayes ran the compass, but sometimes Pennington ran it. It is shown with reasonable certainty the two blocks were put in by the same surveying party at practically the same time. The calls and field notes tie the two blocks together and show no actual vacancy as claimed by appellant, and evidenced that it was the intention of the surveyor to tie them together. Appellant construes what we said as to the line of corners running north from Camp Branch nine miles as locative, not only of block 1, G., C. & S. F., but of section 1411. This line we held evidentiary or descriptive. Hayes ran that line, the evidence clearly indicates, and it is stated by Seeds "as our true meridian" and to locate the surveys west of it. Section 501, block 1, is west of that line and the beginning section of block 1, G., C. & S. F. We think the evidence simply shows that Hayes was mistaken as to the location of section 1411 and called for it by mistake, but it is conclusive that he was not mistaken as to the place he was then actually on the ground and where he put the marks. Two miles, or about that, east of the northeast corner of block 1, G., C. & S. F., Hayes put in marks that are identified on the ground. It is assumed by appellant, because no marks are now found at the northeast corner of block 1, Hayes was not at that point and never marked the point. The beginning call is at "Md. and 2 pits N. W. cor. of No. 1411." This assumption is against the presumption of law, and the evidence in this case puts him in that neighborhood. It should be assumed rather that he did mark it and that the corner has since been destroyed or lost. This corner should, as we conceive it, be established by the work of the men who put in those blocks where it can be found, whether it should be called reversing the calls or not. If the mark was on the ground at the N. E. corner of the block at the time the survey was made, but now lost, certainly it can be found by reversing the calls from other known and established corners. It is asserted there is nothing to locate the northern line of block

1, G., C. & S. F. The Double Lakes corner placed in a short time after by part of the same surveying party of May, 1878, is established. A line projected east to the southeast corner of 1409 and southwest corner of 1407 as marked by Hayes for the then supposed corners of those two surveys on May 12th will fix the south line of the north tier of sections in block 1, G., C. & S. F., and a line projected west from the northeast and northwest corners of these surveys as marked by Hayes will fix the north line of these sections in the block. The evidence is these corners were fixed by Hayes to do the work then in contemplation, and it does not affect the question here that he was then mistaken as to the true location of those corners which he thought he was then marking. We think all this work should have preference in locating the western blocks over the calls for course and distance from a section in Garza county put in the year previous and through the connections of different surveys and for different owners, which are also shown in many respects to be inaccurate. But, if there was nothing to locate the land on the north that would not create a vacancy where appellant is claiming it, if these two blocks should be held together as one piece of work, as was evidently the purpose of the surveyor as shown by the field notes and maps sent to the land office at that time and by the maps up until the year 1900. We think the trial court's judgment is supported by the evidence that there was no vacancy as claimed by appellant. There are one or two inaccuracies in our statement of facts, as, for instance, we state that section 496 calls for the southwest corner of 516. The call in the field notes is for the south line of 516. But, as we conceive it, this will make no material difference in the conclusion that these blocks were tied and intended to be tied together by the surveyor who made both blocks at the same time.

The appellant files a motion to certify the question of reversing the calls to establish the beginning corner. On this point we do not think we are in conflict with other decisions, as above pointed out, the evidence indicating that the block lines of these two blocks were actually surveyed on the ground, and the court would be justified in having so found. This court is agreed upon the affirmance of this case, with no dissent. There is therefore nothing to certify to the Supreme Court. If there is a conflict, as asserted, it is possible that a petition for writ of error would reach the trouble. If, however, this is not true, we think this case has been properly affirmed, and we see no reason for delaying the settlement of this controversy. Appellant appears to desire to obtain uniformity in boundary law. Each case decided rests upon its own peculiar facts. While general rules of surveying have been formulated and to some calls greater dignity is given than to others, yet the lowest may be resorted to and adopted to arrive at the intention of the locator, and to establish the real location of the land. It is only at last a question of fact or evidence in boundary suits. The evidence in this case amply supports the judgment of the trial court. We therefore overrule the motion for rehearing and to certify.