### R. V. Bell et al. v. George A. Preston.

Decided October 22, 1898.

**1. Surveys—Rule as to Controlling Calls.**

The rule that, in determining the location of a survey, marked trees and lines, when found upon the ground and identified, control calls for course and distance, does not apply when the survey was not in fact made upon the ground, but was office work, the surveyor intending to call for the lines and corners of surveys previously made, and in doing so may have made mistakes.

2.  Same—Boundaries—Contemporaneous Surveys.

Two surveys made at the same time, by the same surveyor, for the same owners, should be treated as one piece of work in determining the boundaries of the property covered by one of them.

3.  Same—Evidence—Declaration Against Interest.

The declarations of a party as to the location of the boundary line are not admissible against him, where they were made before he acquired any interest in the subject matter.

ON REHEARING.

4.  Practice on Appeal.

A suggestion first made on a motion for rehearing comes too late to require the appellate court to search the record to find a new support for a ruling of the lower court.

APPEAL from Cooke.  Tried below before Hon. D. E. BARRETT.

*J. T. Adams* and *Stuart & Bell* for appellants.

*Davis & Garnett,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—On March 1, 1855, two surveys in the name of Estevan Mora, one of 640 acres and the other of 320 acres, were made in Warren's Bend, in Cooke County, by a deputy surveyor of that county.  The larger survey begins on Red River, where none of its calls can now be found, and runs "south 3804 varas, to the southeast corner of said [Elijah] Wright [survey].  Thence west 131 varas to a mound in small prairie from which a post oak marked W bears north 19° east 19 varas.  Thence south 185 varas to a post.  Thence east 1801 varas to a post from which a red oak 20 in. dia. bears south 231 varas, marked W. Thence north" to the river, and with its meanders to the beginning.  This survey was patented September 12, 1859.

The other Mora survey, which was patented October 19, 1857, begins, as described in its field notes, "at the southwest corner of Estevan Mora's survey of 640 acres, a rock mound from which a post oak marked W. A. bears north 19° east 17 varas.  Thence south 900 varas, a post.  Thence east 1843½ varas, a post.  Thence north 1095 varas, the southeast corner of the W. H. White survey.  Thence west 762½ varas, the southwest corner of said White survey.  Thence south 195 varas, the southeast corner of said Mora survey.  Thence west 1081 varas, to the place of beginning." As originally recorded in the surveyor's record, the field notes of this survey placed its beginning corner and the southwest corner of the larger survey 231 varas north of the "rock mound from which a post oak marked W. A. bears north 19° east 17 varas." But the call "thence south 231 varas" was, for some reason and at some time not disclosed, marked out on the record and not carried into the patent.

Appellees, the admitted owners of the larger Mora survey, brought this suit against the appellants, the admitted owners of the smaller Mora survey, to recover all land north of an old marked line running east from

the above corner witnessed by the W. A. post oak tree, which corner and line are still both found upon the ground.

Appellants disclaimed as to the larger survey, but insisted that the strip 231 varas wide just north of this line was a part of the smaller tract.

The court submitted the issue of boundary thus joined to the jury, as follows:

"2. In determining the location of surveys, marked trees and lines, when found upon the ground and identified, control calls for course or distance.

"3. The two Mora surveys were made upon the same day and by the same surveyor, and the field notes of both of them should be looked to in determining the position of either of them upon the ground. The 320-acre Mora survey calls to begin at a point from which a post oak marked W. A. bears north 19 degrees east 17 varas, which point is designated as the southwest corner of the 640-acre survey. Now, if this tree can be found on the ground and identified as the one mentioned in the field notes, this will indicate the true southwest corner of the E. Mora 640-acre survey and the true northwest corner of the E. Mora 320-acre survey, and if the defendants are in possession of any land north of a line running east from said tree, you will find for the plaintiffs; otherwise you will find for defendants."

Besides complaining of this charge, appellants assign errorr to the refusal of the sixth special charge requested by them, reading: "It is your duty, gentlemen of the jury, to determine what land was intended by the surveyor who surveyed the two E. Mora surveys to be covered by said E. Mora surveys, and in so determining you will look to all the facts and circumstances introduced in evidence before you, and unless you find and believe, after taking into consideration said facts and circumstances, that the preponderance of the evidence introduced herein shows the land in controversy was intended by said surveyor to be a part of the E. Mora 640-acre survey, you will find for the defendants."

In thus submitting the issue the court made the latter part of the first call in the smaller Mora for its beginning corner control not only the first part of the same call and its further calls for the W. H. White survey, but the calls of the larger Mora as well, and in effect took the case from the jury. Unless, then, that part of the call for the point (rock mound) "from which a post oak marked W. A. bears north 19° east 17 varas" necessarily controls all other calls, appellants' assignments of error must be sustained.

Looking to the evidence, we find that the Elijah Wright and E. Mora locations were made upon substantially the same ground as that first covered by two surveys made in the name of B. W. Osborne and afterwards abandoned. The Osborne surveys, however, had evidently been made upon the ground, and had well defined boundaries, while the circumstances in evidence tended very strongly to rebut the presumption that the Mora surveys had been so made. The point marked by the W. A. tree and mentioned in the first call of the smaller Mora and the marked

line running east from this corner were evidently the original southwest corner and south line, respectively, of the eastern Osborne survey. The evidence tended to show that this corner was 416 varas south of the south boundary of the Elijah Wright survey called for in the field notes of the larger Mora, the Wright covering substantially the same ground as the western Osborne. No such line as that called for as the south boundary of the larger Mora can be traced, and the evidence tended to show that no such line had ever been run or marked. There was some evidence tending to show that the south boundaries of the Wright and of the White surveys called for in the field notes of the Mora surveys could still be traced on the ground, though the preponderance of the evidence tended to show that the above W. A. corner, and the line running thence east, were the only monuments now capable of identification in the territory covered by the several surveys mentioned.

Appellants' first contention, that the field notes of the smaller Mora should not be considered in determining the bounds of the larger Mora, we overrule. As both surveys were made at the same time, by the same surveyor, and for the same owners, we think they should be treated as one piece of work. When so treated, in order to join them together, as was evidently intended by the surveyor who made them, there arises an apparent, if not an irreconcilable, conflict between the calls of the two surveys, and hence a conflict between the calls themselves of the smaller Mora; for the call in the larger Mora for distance south from the Wright, in order to make the southwest corner of the larger Mora and the northwest corner of the smaller Mora a common corner, must, at least according to the testimony relied on by appellants, be extended 231 varas. Unless, then, the call in the larger Mora for 185 varas be rejected as a mistake, and extended 231 varas, so as to make it read 416 varas—(the further call thence east "to a post from which a red oak 20 in. dia. bears south 231 varas, marked W.," being in any view of the case a mistake), —the call of the smaller Mora to begin "at the southwest corner of the Estevan Mora's survey of 640 acres" would be in conflict with the further call for "a rock mound from which a post oak marked W. A. bears north 19° east 17 varas;" and if the south call of the larger Mora be so extended, then appellants' evidence tended to show a conflict between the call last quoted and the further calls of the smaller Mora for the W. H. White survey.

As the trial was by jury, it should have been left to them to determine which, if any, of the material calls in question had been made by mistake, and hence to determine from all the circumstances in evidence where the surveyor who made the locations of the two Mora surveys intended the dividing line between them should be. We conclude, therefore, that the court should not have selected and given controlling effect to the single call mentioned in the third paragraph of the charge quoted above. While it is the general rule, as stated in the second paragraph, that "in determining the location of surveys, marked trees and lines, when found upon the ground and identified, control calls for course and

distance," the rule is not one of invariable application, but, like all other general rules on the subject, is subject to qualification; and the facts of this case called for some such qualification as that contained in the sixth special charge quoted above.

It is true the marked tree described in the court's charge and called for in the field notes of the smaller Mora could undoubtedly "be found on the ground and identified as the one mentioned" in said field notes, and the jury, under the evidence, could not have otherwise found; and had the evidence also conclusively shown, or the presumption obtained, that the surveyor in making the Mora survey went upon the ground and marked this tree, such tracing of his footsteps would doubtless have had controlling effect, and would have warranted the unqualified charge. But, as before seen, the circumstances in evidence tended to show that the survey had not been so made, but that it was office work, and that the surveyor intended to call for the lines and corners of surveys previously made, and in doing so made mistakes, as is usual in such cases.

For the views of our Supreme Court upon what the court's charge should contain in this class of cases, see the opinion of Justice Brown in Haff v. Crawford, 89 Texas, 214. See also Best v. Splawn, 33 S. W. Rep., 1005; Ayers v. Beaty, 24 S. W. Rep., 366, decided by this court.

Appellants also assign error to the admission in evidence over their objections of the testimony of the witnesses Locker, Kelly, and Pybas to prove that appellant R. V. Bell, before he acquired his interest in the Mora survey of 320 acres, had stated to each of said witnessess that the northwest corner. of this survey was where the call for the W. A. tree indicated it to be.

To sustain this ruling, counsel for appellees submit the following proposition, and that only: "The admissions that the defendant R. V. Bell made in reference to the W. A. tree being the corner of the Mora 320-acre survey, were admissible against him, and the fact that at the time he made the admissions he was disinterested, and under no temptation to exceed or fall short of the truth, adds to their weight, and furnishes additional reasons why they should be admitted."

No authority is cited in support of this proposition, doubtless for the reason that none could be found. We know of none. This assignment, too, is consequently sustained.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

STEPHENS, Associate Justice.—The contention is renewed in motion for rehearing and in request to certify to Supreme Court, and is persistently urged in both written and oral arguments, that the declarations of appellant R. V. Bell as to the northwest corner of the little

Mora survey, though made before he became the owner of that survey, were properly admitted in evidence against him. No case directly in point has been cited on either side.

Mr. Greenleaf, volume 1, section 179, states the rule as we understand it, thus: "The admissions which are thus receivable in evidence must, as we have seen, be those of a person having at the time some interest in the matter afterwards in controversy in the suit to which he is a party." He then proceeds to illustrate it, but by cases in which admissions of guardians, administrators, and the like, made before they were clothed with the trust, were held to be inadmissible against them in their representative capacity.

In Wood's Practice Evidence, page 501, we find the same rule stated thus: "Nor are the declarations of a party interested in the matter in controversy [admissible], if made at a time when he had no interest;" to sustain which he cites the case of Burton v. Scott, 3 Randolph (Va.), 399, which is directly in point. That was a will contest, involving the testamentary capacity of Major Scott, the testator. The declarations of Mrs. Scott, made before the will was executed, and tending to show the incapacity of her husband to make a will, were excluded as incompetent.

Two of the four judges participating, all of whom concurred, delivered opinions, that of Judge Carr, upon this point, reading: "The real question then is this: Can the declarations of a person as to a subject in which he had no interest at the time be given in evidence against him, if by any subsequent event an interest in the subject should be thrown upon him? I have not been able to find any authority directly on this point. All the cases in which the declarations of a party are said to be evidence against him, show that he had, at the time of making such declarations, an existing interest. The principle, however, on which his declarations are made evidence will, I think, decide the question before us. 'The true meaning and sense of the rule, that the declarations of parties may be given in evidence against them, is the reasonable presumption that no person will make any declaration against his interest, unless it be founded in truth.' Testing the question by this criterion, the declarations of Mrs. Scott, made before the will, can not be given in evidence; for it is the will which gives existence to her interest. Before its date she could not know that she would be left a penny; she could not know that it would not be so written as to oblige her to renounce it, and fly to the law for her support. She has not then that motive so powerful as to afford a safe guarantee that she would make no declaration as to the incapacity of her husband which was not founded in truth; and her declarations, wanting the essential quality to make them evidence, were properly excluded."

That of Judge Green reads: "The declarations of Mrs. Scott offered in evidence were made at a time when she had no interest, any more than a perfect stranger, in the question whether Major Scott was sane or insane. They can not, therefore, be received as her admissions against her

interest, nor as hearsay, any more than those of a perfect stranger, who was disabled from giving evidence by death."

We conclude, therefore, that both in principle and on authority the declarations of Bell, being clearly incompetent when made, did not become competent because of his subsequently acquired interest.

It is now for the first time suggested that, because of his interest in some other survey than the Mora, he was interested in the corner in question when the declarations were made, but the suggestion comes too late to require us to search the record again to find a new support for the ruling in question. It should have been made on the original hearing.

Nor do we determine whether the evidence might not have been admissible as impeaching testimony, since it was not so offered.

The other ground of the motion is sufficiently covered by the opinion already filed.

Since we see no reason to doubt the correctness of the disposition made of the appeal upon either ground, both the rehearing and the certificate to the Supreme Court will be denied.

*Overruled.*