**JACKMAN et al. v. GAY.  (No. 6244.)\***

(Court of Civil Appeals of Texas. Austin. Nov. 9, 1921. Rehearing Denied Feb. 1, 1922.)

1. **Evidence** ⊗═222(9), 265(18) — **Assignees' admissions prior to assignment held admissible weight being for the jury.**

Where G. and L. purchased cattle together, and G. was accused of murdering L. and jailed, and L.'s administrator went to G.'s mother's home, where the cattle were kept, and L.'s cattle were pointed out by G.'s mother, who said all others were hers or her children's, in an action by the mother on a claim assigned by G.

for conversion, her prior admissions of L.'s ownership were admissible; the time and circumstance of the statement, and the fact that the mother had at the time no pecuniary interest, being merely matter for the jury to consider in determining the weight to be given the admissions.

2. **Trover and conversion** ⊗═66—**Question for jury.**

In an action for conversion of cattle held that the jury should have been permitted to pass on the weight of the evidence, and it was error to direct a verdict for plaintiff.

Appeal from District Court, Hays County; M. C. Jeffrey, Judge.

Action by Mrs. Eliza Gay against W. T. Jackman and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

B. G. Neighbors, R. E. McKie, and L. D. Hill, all of San Marcos, for appellants.

E. M. Cape and Will G. Barber, both of San Marcos, for appellee.

KEY, C. J. [1] At the time of the transactions involved in this case, Mrs. Eliza Gay owned and resided upon a home near Wimberly, in Hays county, which included a 1,500-acre pasture. In 1897, her son Gib Gay, and another man by the name of Chas. Lindeman came from the state of Arizona to Hays county, and stayed at Mrs. Gay's place until Lindeman disappeared several months thereafter. Soon after his disappearance, Gib Gay was charged with murdering him, and was arrested, put in jail, and remained there for about four years.

While they were staying at Mrs. Gay's, Lindeman and Gib Gay purchased from different parties between 90 and 100 head of cattle, and put them in Mrs. Gay's pasture. After the disappearance of Lindeman, and the arrest of Gib Gay, W. T. Jackman, who was at that time sheriff of Hays county, was duly appointed temporary administrator of the estate of Lindeman, and the order of appointment conferred upon him full power to take charge of, care for, collect, and protect Lindeman's estate. Thereafter Jackman went to Mrs. Eliza Gay's place, took possession of and removed from her pasture 93 head of cattle which had been placed there by her son, Gib Gay, and Chas. Lindeman; in doing which, he acted as temporary administrator of Lindeman's estate, and took possession of the cattle as the property of such estate. Thereafter, and in pursuance of an order of the probate judge, Jackman sold the cattle, and W. J. Cowan became the purchaser of 82 head, and the remainder were sold to other persons. Jackman deposited the proceeds of the sales in a bank in Hays county. Thereafter, and before this

suit was brought, Gib Gay assigned and transferred to his mother, Mrs. Eliza Gay, whatever cause of action he had against W. T. Jackman and those who assisted him, arising out of the fact that the cattle referred to were taken and disposed of by Jackman.

In August, 1902, Mrs. Eliza Gay commenced this suit against W. T. Jackman, Andrew Cowan, J. M. Hons, and L. H. Klingerman, and based her cause of action upon the claim for damages which had been assigned to her by Gib Gay. The averments in her petition and the prayer showed that the plaintiff was suing for damages alleged to have accrued to Gib Gay on account of the alleged conversion of the cattle, which claim the plaintiff alleged had been transferred to her.

The answer of the defendants included a plea of privilege, general demurrer, general denial, and special plea, alleging that the cattle referred to were the property of Chas. Lindeman, and not of Gib Gay; that Gib Gay had murdered Chas. Lindeman, and that the defendant, W. T. Jackman, had been duly appointed temporary administrator of his estate, and rightfully took possession of the property as such. Some other matters are alleged in the answer, which are not necessary to be stated here.

The plaintiff filed a supplemental petition, containing certain exceptions to the answer of defendants, and a denial of the facts therein alleged. She also filed an amended original petition substantially the same as her original petition, except that it did not include J. M. Hons and L. H. Klingerman as defendants, the plaintiff having dismissed as to both of them.

The case remained on the docket until the September term, 1919, of the district court of Hays county, when it went to trial before a jury, and, after the evidence was closed, the court instructed the jury to return a verdict for the plaintiff against the defendants, Jackman and Cowan, jointly and severally, for the sum of $1,990, with interest at the rate of 6 per cent. per annum from November 1, 1897, and against defendant, W. T. Jackman, alone, for the further sum of $150, with interest at the same rate and from the same date, and to find against Jackman both individually and as administrator of the estate of Chas. Lindeman, deceased. The jury returned a verdict as instructed, and judgment was rendered accordingly. However, in disposing of the defendants' motion for a new trial, the court held that the motion would be granted unless the plaintiff would enter a remittitur of one-half of the amount recovered, whereupon, the plaintiff consented to such remittitur, and the judgment was reformed, allowing plaintiff to recover only one-half of the amount specified in the original judgment, and in other respects the motion for new trial was overruled. The defendants have appealed.

The questions hereafter discussed are presented by proper assignments.

It is strenuously insisted on behalf of appellants that the trial court committed error in denying to them the right of trial by jury and directing the jury to return a particular verdict for the plaintiff. On the other hand, it is zealously insisted that the undisputed testimony shows that the plaintiff was entitled to recover the amount awarded her by the judgment, and therefore the trial court properly directed a verdict for her. If Gib Gay owned any interest in the cattle that were seized by the defendant Jackman, and thereafter sold by him, such seizure and disposal operated as a conversion to the extent of Gib Gay's interest in the property. It may be conceded that there was uncontradicted testimony sufficient to show that two or three small amounts were paid by Gib Gay in the purchase of the cattle referred to, but there was no direct proof that he made any other payments. Counsel for appellee make the contention that it was shown that Gib Gay and Chas. Lindeman were buying cattle together, and that the former was in possession of the cattle when they were taken by the defendant Jackman, and that those facts constitute prima facie evidence that he owned, at least, a half interest in them. But there was some circumstantial evidence tending, perhaps remotely, to show that Lindeman had furnished most of the money that was used in paying for the cattle. Besides, the defendant Jackman testified:

"After getting the cattle gathered and in the pen I went to the house and talked to Mrs. Gay, and I told her I wanted her to go to the lot with me and point out such cattle as she might claim herself. She pointed out the cattle branded in a certain brand, and said they were Lindeman's cattle, and all others she pointed out as belonging to her and her different children. I cut out her cattle and turned them out in the pasture. There was no animal that I drove away that there was any contention about the ownership. I drove away just the cattle that she pointed out to me as Charley Lindeman's cattle."

That evidence tended to show that as a matter of fact all of the cattle referred to belonged to Charley Lindeman, and Gib Gay owned no interest whatever in them; and if such were the facts the plaintiff was not entitled to recover anything. She claimed no right derived from Lindeman, but only such cause of action as was assigned to her by Gib Gay, and if he owned no interest in the cattle taken by the defendant Jackman, he had no cause of action resulting from such taking, and therefore conveyed none to the plaintiff.

Appellee objected to the testimony of appellant Jackman, as set out above, upon the ground that it was hearsay and incompetent

to affect the title that Gib Gay may have had to the cattle at that time, and the fact that thereafter the plaintiff acquired his cause of action did not render her statement then made to Jackman admissible against her; she not having any interest in the cattle at the time such statement was made. The trial court overruled that objection, and permitted Jackman to testify as above shown. Appellee reserved a bill of exception to that ruling, which bill was presented to the judge, after the court adjourned, but within due time, and the judge approved it, with the explanation that, while he admitted the testimony over the plaintiff's objection, upon further reflection he concluded it was inadmissible, and that while he did not formally exclude it from the jury, he considered that his action, instructing a verdict for the plaintiff and overruling the defendants' motion for a new trial, had that effect. Counsel for appellee do not controvert the proposition that, if the testimony referred to was admissible, the court erred in directing a verdict against appellants, but insists that the case should not be reversed upon that ground, because that evidence was not admissible, and should not have been considered by the jury. Counsel for appellants controvert that contention, and claim that Jackman's testimony was admissible, and entitled them to have the case passed upon by the jury.

The argument presented in favor of appellee is that, inasmuch as she had no interest in the cattle at the time they were taken by appellant Jackman, and acquired from Gib Gay the cause of action sued on long after such taking, therefore, if she made the statements testified to by Jackman, they cannot be considered as admissions against her interest, and therefore are not admissible. Some authorities are cited which tend to support that contention, especially Reed v. Phillips, 33 S. W. 986, decided by this court, and Bell v. Preston, 19 Tex. Civ. App. 375, 47 S. W. 375, 753, decided by the Fort Worth Court of Civil Appeals. No case has been cited, and we have found none, decided by our Supreme Court; and therefore we feel at liberty to reconsider the question, and such consideration as led to the conclusion that the testimony in question was admissible.

It is not believed that any work upon the subject of evidence is more thorough, logical, and valuable than that prepared by Prof. Wigmore, and we quote what he has to say pertinent to the question under consideration:

"Just as a witness' testimony is discredited when it appears that on another occasion he has made a statement inconsistent with that testimony, so also the party is discredited when it appears that on some other occasion he has made a statement inconsistent with his present claim. This is the simple theory upon which a party's admission—of the informal sort, which might better be termed 'quasi admissions' —are every day received in evidence on behalf of his opponent. The witness speaks in court through his testimony only, and hence his testimony forms the sole basis upon which the inconsistency of his other statement is predicated. But the party, whether he himself takes the stand or not, speaks always through his pleadings and through the testimony of his witnesses put forward to support his pleadings; hence the basis upon which may be predicated a discrediting inconsistency on his part includes the whole range of facts asserted in his pleadings and in the testimony relied on by him. Thus, in effect, and broadly, anything said by the party may be used against him as an admission, provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony.

"It follows that the subject of an admission is not limited to facts against the party's interest at the time. No doubt the weight of credit to be given to such statements is increased when the fact stated is against the person's interest at the time; but that circumstance has no bearing upon their admissibility. On principle, it is plain that every prior statement of the party, exhibiting an inconsistency with his present claim, tends to throw doubt upon it, whether he was at the time speaking apparently in his own favor or against his own interest. For example, a plaintiff who now claims a debt of $100 is clearly discredited by having made a demand a month ago for only $50, even if at the time the debtor conceded only $25, and thus put the demandant in the position of making an assertion purely in his own favor and for the aggrandizement of his claim. If the principle upon which admissions were received rested at all upon the disserving quality of the fact asserted at the time of assertion, all such statements would be as certainly rejected when offered by the opponent as they would be when offered by the party himself in his own favor. Nevertheless the fallacy is sometimes committed of placing the admissibility of such statements on that untenable ground. That it is a fallacy, in the fullest sense, is to be seen, not only by reflecting upon the principle involved, but also by observing that no court ever yet excluded an opponent's admission because of such a limitation. Daily practice and unquestioned tradition are here unmistakable. Sometimes, too, the courts have expressly negatived the fallacy in question.

"The logical basis, therefore, of the use of admissions is twofold. In the first place, all admissions furnish, as against the party, the same discrediting inference as that which may be made against a witness in consequence of a prior self-contradiction; the nature of this inference, both in its strength and in its weakness, has been already examined, and need not be here reconsidered. In the next place, those admissions which happen to state a fact that was at the time against the party's interest have an additional and testimonial value, independent of the contradiction and similar to that which justifies the hearsay exception for statements of facts against interest; this element adding to their probative value, but not being essential to their admissibility."

Elliott on Evidence is another very valuable treatise upon that subject, from which we copy as follows:

"It is said that an admission is a fact to be proved by evidence rather than evidence to prove a fact—levamen probationis rather than probatio—and it has been intimated that extrajudicial admissions of one party do not relieve the other party from introducing evidence of the fact referred to in the admission, but simply operate to discredit the present claim of one party by its inconsistency with a former claim on his part. In a sense, it is true, theoretically at least, that an admission is ordinarily a fact to be proved, but when it is proved its effect is certainly not necessarily confined to discrediting the present claim of a party in the same manner that a witness, who is not a party, is discredited by his prior inconsistent statements. On the contrary, if undenied, it may relieve the other party from proving the fact stated in the admission, or throw the burden on the party making it to disprove such fact. At all events, when proved, it operates as evidence of the fact admitted, at least as yielding a presumption or an inference against the party charged, or as relieving the other party from more formal proof. The true theory upon which admissions of a party are held competent is somewhat difficult to ascertain. It is frequently said that they are competent because they are made by the party against his own interest, and the ordinary motives of human conduct are sufficient warranties for belief. Again, it is said that they are admitted on grounds of policy and convenience. But the last statement is hardly a satisfactory explanation, and, while the former reason might be sufficient to justify their reception in a majority of instances, yet it is not always true that the admission appeared to be against the party's interest at the time he made it. On the contrary, it may be competent although it seems highly favorable to him, and, if called out by the other party, or competent in explanation of what he has called out, it may be received, although it still appears favorable to the party making it. The true theory would seem to be that, if relevant, it is admissible against the party making it, because, having admitted the fact to be true, he cannot complain if it is treated as true, and that whatever a party has voluntarily admitted to be true, whether against his interest or not, may reasonably be taken as true."

In a footnote, Mr. Elliott quotes from Taylor on Evidence, as follows:

"This is somewhat in the nature of an 'estoppel element,' although it is not meant that the party is necessarily estopped or concluded by ordinary extrajudicial and noncontractual admissions. If knowingly made by the party against his own interest it may have stronger probative force, as will hereafter be shown, that is not the only test of the competency of admissions. 'It is admissible because the other side made it.' Taylor's Ev. (Chamberlayne's Notes) 554."

In Truby v. Seybert, 12 Pa., 101, the court said:

"The general rule is—and it has few exceptions—that a man's acts, conduct, and declarations, wherever made, provided they be voluntary, are admissible against him, as it is fair to presume they correspond with the truth; and it is his fault if they do not."

In State v. Anderson, 10 Or. 448, the Supreme Court of that state said:

"But the admissibility of a party's own previous statements or declarations in respect to the subject in controversy, as evidence against him, does not in any manner depend upon the question whether they were for or against his interest at the time they were made, or afterwards. The opposite party has a right to introduce them if relevant and voluntarily made, no matter how they may stand or have stood in relation to the interest of the party making them."

In Robinson v. Hutchinson, 31 Vt. 443, a will was contested, on the ground of want of testamentary capacity and undue influence of the executor and his brother, who were sons of the testatrix and legatees under the will. The contestants offered evidence to the effect that about four years before the will was made the executor said that the testatrix did not know what she was talking about; and it was held that the testimony referred to was admissible.

In Barber's Administrator v. Bennett, 60 Vt. 662, 15 Atl. 348, 1 L. R. A. 224, 6 Am. St. Rep. 141, it was held that the declarations of a real party against the validity of a claim, though made before he became the owner of the claim, are admissible and competent evidence as tending to prove a defense in a suit found upon such claim; and it was error to limit such declarations to merely impeaching testimony. In that case the court said:

"We think Robinson v. Hutchinson is sound, though Burton v. Scott, 3 Rand. (Va.) 399, is a similar case, and decides the other way, on the ground that the rule, that the admissions of a party are evidence against him, rests upon the presumption that no one will make a declaration against his own interest unless it is true, and hence, that the interest must exist when the declaration is made. If this were the true ground of the rule, the logic of that case is irresistible. But it is not the true ground. The mistake lies in supposing the presumption to be the test of admissibility, whereas it is 'only a test of credibility; for, as said by Professor Greenleaf, in regard to many admissions it cannot be supposed that at the time of making them the party believed they were against his interest, but often the contrary. Therefore, he says, such evidence seems to be more properly admissible as a substitute for the ordinary legal proof. 1 Greenl. Ev. s. 169. Mr. Wharton says it is admissible, either as yielding presumptions against the party charged, or as relieving (under ordinary circumstances) the party offering it from the necessity of more formal proof. 2 Whart. Ev. § 1077."

Reed v. Phillips, and Bell v. Preston, supra, the two Texas cases relied upon by appellee, rest upon the same ground as Burton v. Scott, 3 Rand. (Va.) 399, which is criticized and controverted by the Supreme Court of Vermont in Barber's Administrator v. Bennett, supra. We agree with that criticism, and are therefore constrained to hold that the two Texas cases, and any others which follow the ruling made in Burton v. Scott, are unsound.

It is true, in this case the plaintiff did not testify, and therefore the evidence could not be offered for the purpose of impeaching her as a witness. It is also true that if she made the statement testified to by appellant Jackman, she had no interest in the property, and therefore could not have understood that she was making an admission against her interest. In our judgment, the true ground upon which the testimony is admissible is the fact that it tends to show that Mrs. Gay, who bases her suit upon the theory that Gib Gay owned an interest in the cattle, has made a statement, which in legal terminology may be designated as an admission, to the effect that the cattle referred to belonged to Charley Lindeman, and therefore Gib Gay could have no interest in them. When that statement was made, the circumstances under which it was made, and the fact that Mrs. Gay had no pecuniary or property right in the cattle, may be considered by the jury in determining the weight to be given to such statement, if made, but they have no bearing in determining the admissibility of the testimony.

In Bell v. Preston, supra, it is stated by Mr. Justice Stephens, the eminent judge who wrote the two opinions filed in that case, that counsel for appellant had cited no authority in support of the proposition that the declarations of a litigant in disparagement of his title, or tending to break down his cause of action or defense, were admissible on behalf of his adversary, though, at the time he made the declaration or admission, he had no interest whatever in the subject-matter of the litigation, doubtless for the reason that none existed; while, on the other hand, Prof. Wigmore says that no court has ever yet excluded an opponent's admission because of such a limitation. In making those statements, both Judge Stephens and Prof. Wigmore fell into error, because at the time such statements were made there were conflicting decisions upon that point.

Some other questions are presented in appellants' brief, but are decided against them.

We also overruled appellee's contention to the effect that the judgment should be affirmed for certain other reasons which we deem it unnecessary to discuss.

[2] While in a proper case it is permissible for a trial judge to withdraw it from a jury and require them to return a particular verdict, we are of the opinion that this case does not fall within that class, and that the trial court committed error when it directed a verdict for the plaintiff, for which error the judgment is reversed, and the cause remanded.

Reversed and remanded.